UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KIP PRESSEY,                        )
                                    )
            Plaintiff               )
                                    )
v.                                  )    No. 2:16-cv-00425-JDL
                                    )
NANCY A. BERRYHILL,                 )
Acting Commissioner of Social Security,[1]  )
                                    )
            Defendant               )

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in determining his mental residual functional capacity ("RFC") by failing to adequately address his social limitations or his limitations in concentration, persistence and pace; failed to provide an adequate rationale for her findings as to his physical RFC; and relied on flawed vocational expert testimony at Step 5. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 2-12. I find no basis for remand and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 17, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, Finding 1, Record at 12; that he had severe impairments of degenerative disc disease of the lumbar spine, affective disorder/bipolar disorder, and personality disorder/antisocial personality disorder, Finding 3, *id*. at 13; that he had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could lift and carry 20 pounds occasionally and 10 pounds frequently, needed to be allowed to alternate between sit and stand positions every 30 minutes, could not operate foot controls, could never climb ladders, ropes, or scaffolds, needed to avoid unprotected heights and dangerous equipment, could tolerate no more than occasional contact with coworkers and supervisors, could not work in a teamwork or collaborative environment, and needed to avoid contact with crowds and the general public, Finding 5, *id*. at 15-16; that, considering his age (41 years old, defined as a younger individual, on his alleged disability onset date, August 16, 2012), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 20; and that he, therefore, had not been disabled from August 16, 2012, through the date of the decision, May 7, 2015, Finding 11, *id*. at 22. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Mental RFC Determination

#### 1. Plaintiff's Social Limitations

The plaintiff first argues that the ALJ erred in assessing his social limitations when determining his mental RFC. *See* Statement of Errors at 2-5. The ALJ relied on the opinions of three experts in considering the plaintiff's mental RFC: agency examining consultant Edward Quinn, Ph.D., and agency nonexamining consultants Peter G. Allen, Ph.D., and Brian Stahl, Ph.D. *See* Record at 19.

Dr. Quinn found the plaintiff to have an antisocial personality disorder and, with respect to his ability to interact socially in the workplace, concluded:

> He is likely to have difficulties interacting well with others . . . [and is] particularly . . . likely to have difficulties with supervisors, coworkers who take on authority roles, and the public with complaints. He is likely to have difficulty with stressors . . . [and] substantial problems behaving in an emotiona[ly] stable manner. He is likely to have difficulties in social settings . . . [and] issues with reliability.

*Id.* at 441. The ALJ afforded Dr. Quinn's assessment partial weight and those of Drs. Allen and Stahl great weight, explaining that Drs. Allen and Stahl had had access to a majority of the relevant medical record, including the Quinn report, and that Dr. Quinn did not have the benefit of the treatment record to examine. *See id.* at 19. The plaintiff argues that the nonexamining consultants largely agreed with Dr. Quinn but failed to include several specific limitations that he had assessed, as a result of which their mental RFC opinions were "simply too 'telegraphic' to be a valid assessment of [his] mental impairment." Statement of Errors at 3-4 (quoting *Lindsey v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00038-JAW, 2011 WL 86567, at *7 (D. Me. Jan. 10, 2011) (rec. dec. *aff'd* Feb. 28, 2011)). Therefore, he argues, the ALJ erred in failing to find, or even address, those additional limitations in the plaintiff's RFC.

The ALJ found, in relevant part, that the plaintiff could not tolerate more than occasional contact with coworkers and supervisors, could not work in a teamwork or collaborative environment, and needed to avoid contact with crowds and the general public. *See* Finding 5, Record at 15-16.

The plaintiff contends that "the ALJ should have acknowledged that [he] would likely have difficulties with supervisors and coworkers who take on authority roles in addition to the public" as well as issues with reliability. *Id.* at 4. He argues that the ALJ's assessed restrictions were primarily quantitative, insufficiently reflecting his qualitative restrictions in getting along with others. *See* Statement of Errors at 4-5. At oral argument, his counsel elaborated that, because the plaintiff's difficulties in getting along with coworkers and supervisors could erupt at any time, limitations on the quantity of time spent with them were inadequate.

Yet, contrary to the plaintiff's contention, the ALJ did acknowledge the plaintiff's likely difficulties with supervisors and coworkers in positions of authority by providing not only

4

quantitative restrictions that he was to have only occasional contact with supervisors and coworkers of any stripe, but also qualitative ones prohibiting him from working in a teamwork or collaborative environment.  *See* Finding 5, Record at 15-16.

The plaintiff's arguments that Dr. Quinn's assessment should have resulted in a more restrictive RFC, and was more specific than those of Drs. Allen and Stahl, are similarly without merit.  As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 4, Dr. Quinn's assessment of the plaintiff's social abilities in the workplace employs the qualifier "likely" throughout, *see* Record at 441.  This court has previously held that opinions by examining consultants employing such qualifiers as "may" and "likely" fail to "translate actual or expected difficulties into specific limitations[,]" as a result of which "their statements are not RFC opinions as defined in 20 C.F.R. §§ 404.1545(c), 416.945(c)[.]" *Sheldon v. Colvin*, Civil No. 2:13-CV-315-DBH, 2014 WL 3533376 at *5 (D. Me. July 15, 2014).  Further, a one-time examining consultant is not a "[t]reating source," 20 C.F.R. §§ 404.1052, 416.902, and thus the ALJ need not provide good reasons for rejecting, in whole or in part, his or her medical opinion, *compare id.* §§ 404.1527(b)(2), 416.927(b)(2).  The ALJ considered Dr. Quinn's opinion, and those of the Drs. Allen and Stahl, and reached a conclusion reasonably supported by the evidence.

Here, the ALJ's social limitations were supported by the findings of all three experts.  Dr. Allen determined that the plaintiff had a marked limitation in interacting with the general public, but moderate limitations in accepting instructions, responding to criticisms from supervisors, and the ability to work with coworkers.  *See* Record at 127.  He translated this to an RFC assessment that the plaintiff could "interact appropriately with [a] small group of coworkers [and] tolerate normal supervision; [he] may be too irritable to work with the public" and would best function in

5

a position with minimal social contacts at work. *Id*. Dr. Stahl found essentially the same limitations, adding that the plaintiff would "[n]ot do well in a team approach." *Id*. at 156. Accordingly, their opinions supported the ALJ's assessed social limitations. Further, "[t]he opinions of [agency] non-examining reviewers . . . can constitute substantial evidence of RFC, particularly if those reviewers have had access to the material raw medical reports of examining and treating physicians." *Powers v. Barnhart*, No. 04-86-P-C, 2004 WL 2862170, at *2 (D. Me. Dec. 13, 2004) (rec. dec. *aff'd* Jan. 5, 2005). That is the case here. In addition to reviewing Dr. Quinn's assessment, both Drs. Allen and Stahl examined the plaintiff's psychiatric treatment records. *See* Record at 122-23, 149-51. The plaintiff has failed to show that an assessment of greater social restrictions was required.

### 2. Plaintiff's Limitations in Concentration, Persistence, and Pace

The ALJ determined that the plaintiff had mild difficulties with concentration, persistence, and pace, citing Dr. Quinn's findings that he had logical and goal-oriented thought processes and that his attention, sustained concentration, and memory all appeared to be within normal limits. *See id*. at 15. She noted that Dr. Quinn had found that the plaintiff could complete four-step instructions and that function reports showed that he could shop, count change, pay bills, and manage bank accounts. *See id*. See assessed no limitations in that area. *See* Finding 5, *id.* at 15-16.

The plaintiff argues that the ALJ should have found that he had moderate limitations in concentration, persistence, and pace. *See* Statement of Errors at 5. In support of this proposition, he points to Dr. Quinn's statements that he would "likely" have (i) issues with reliability, (ii) difficulties with stressors, and (iii) substantial problems behaving in an emotionally stable manner, *id.*, Record at 441, as well as the findings of Drs. Allen and Stahl that he had moderate

6

limitations in the abilities to maintain attention for extended periods or maintain regular attendance and be punctual, *see* Statement of Errors at 5; Record at 126, 155.

The plaintiff contends that two of 14 mental abilities listed in the Social Security Program Operations Manual ("POMS") as critical for performing unskilled work – the abilities to perform at a consistent pace without an unreasonable number and length of rest periods and to ask simple questions or request assistance – were not addressed by either the ALJ or the state agency reviewers. *See* Statement of Errors at 5; POMS § DI 25020.010(B)(3). Yet, as the commissioner notes, *see* Opposition at 8, the POMS itself provides that the individual mental abilities to which the plaintiff refers do not constitute an RFC assessment. *See*, e.g. *Riley v. Astrue*, No. 06-95-B-W, 2007 WL 951424 at *6 (D. Me. Mar. 27, 2007) (rec. dec. *aff'd* Apr. 18, 2007).

Further, Dr. Quinn's findings do not, on their face, undermine the ALJ's assessment of the plaintiff's concentration, persistence, or pace. Again, Dr. Quinn's use of the qualifier "likely" undermines any argument that the plaintiff was more severely limited in this field. Moreover, as noted above, Dr. Quinn's opinion is not entitled to the same deference as that of a treating physician. Finally, while the ALJ did not reference the evaluations of Drs. Allen and Stahl in explaining why she found only mild difficulties in concentration, persistence, and pace, their findings were generally consistent with hers. *Compare* Record at 15 with *id*. at 126-27, 156.

The plaintiff does not identify specific limitations he claims were omitted, apart from deficits in the two POMS abilities that he highlights. *See* Statement of Errors at 5. Yet, neither Dr. Allen nor Dr. Stahl found a significant limitation in the plaintiff's ability to ask questions or request assistance, and Dr. Allen did not find him significantly limited in the ability to perform at a consistent pace. *See* Record at 126-27, 156. While Dr. Stahl did deem him moderately limited in the ability to perform at a consistent pace, *see id*. at 156, the ALJ's RFC determination was

generally consistent with the RFC portions of the Allen and Stahl assessments, *compare* Finding 5, *id*. at 15-16 *with id*. at 126-27, 156. In addition, in most of the POMS fields, both agency nonexamining consultants found no limitations or only moderate limitations. *See id*. at 126-27, 155-57. Accordingly, the ALJ's conclusion that the plaintiff had only mild difficulties with concentration, persistence, and pace was supported by substantial evidence.

To the extent that the plaintiff asserts that the ALJ failed to evaluate the impact of stress in accordance with *Lancellotta v. Secretary of Health & Human Servs.*, 806 F.2d 284, 285 (1st Cir. 1986), *see* Statement of Errors at 5-6, "this court has held that the requirements of *Lancellotta* are met when an adjudicator evaluates the impact of a claimant's mental impairments on his or her ability to meet the basic mental demands of work, namely, the abilities to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and customary work situations; and deal with changes in a routine work setting[,]" *Poulin v. Colvin*, No. 1:14-cv-30-JHR, 2015 WL 237326, at *3 (D. Me. Jan. 18, 2015) (citation omitted). The ALJ did so here.

## B. Physical RFC Determination

The ALJ found that the plaintiff retained the physical capability to:

> [P]erform light work, as defined by 20 CFR §§ 404.1567(b) and 416.967(b), except he can lift and carry 20 pounds occasionally and 10 pounds frequently; he must be allowed to alternate between sit and stand positions every 30 minutes; he cannot operate foot controls; he can never climb ladders, ropes or scaffolds; [and] he must avoid unprotected heights and dangerous equipment[.]

Finding 5, Record at 15. The plaintiff suggests that it is "not possible to determine the basis" of this RFC, because the ALJ "gave no explanation for the difference between the state agency findings and her own, stressing instead the weight given to the state agency opinions and that fact [sic] that she found the additional evidence adduced at the hearing level not to be of any significant

8

evidentiary weight." Statement of Errors at 6. This contention is undermined by the ALJ's thorough analysis of the plaintiff's history of back pain, treatment, medical records, and testimony. *See* Record at 16-18. In the course of this consideration, the ALJ supportably concluded that the plaintiff's testimony concerning the severity of his pain was not supported by the objective medical evidence. *See id.* Specifically, the plaintiff testified that his back pain was so severe that he stopped working in August 2012; that the condition caused numbness in his left leg; and that he treated it with medical marijuana and heat, while eschewing pharmacological aids because they upset his digestive system. *See id.* at 16. The ALJ noted that, in contrast, the notes of treating physician Kamlesh N. Bajpai, D.O., and agency examining consultant Robert S. Charkowick, D.O., indicated that the plaintiff's condition was less severe than alleged and improved with medication. *See id*. at 17-20*.* The ALJ observed, for example, that Dr. Charkowick characterized his findings on physical examination of the plaintiff in January 2013 as "essentially normal." *Id.* at 18; *see also id.* at 445.

To the extent that the plaintiff argues that the ALJ's finding that he was capable of doing light work is unsupported by substantial evidence, *see* Statement of Errors at 6, any error is harmless because that finding is more favorable to him than the evidence otherwise supports, *see e.g. Bowden v. Colvin*, No. 1:13-CV-201-GZS, 2014 WL 1664961 at *4 (D. Me. Apr. 25, 2014) (noting the "long-standing rule of Social Security law in this district that a claimant may not obtain a remand on the basis of an RFC that is more favorable to him . . . than the evidence would otherwise support").

The record contains three expert opinions bearing on the plaintiff's functional capacity – those of Dr. Charkowick and agency nonexamining consultants Donald Trumbull, M.D., and Benjamin Weinberg, M.D. – and all three concluded that the plaintiff was less physically restricted

than found by the ALJ. *Compare* Finding 5, Record at 15 *with id.* at 125-26, 153-55, 445; *compare Staples v. Berryhill*, No. 1:16-cv-00091-GZS, 2017 WL 1011426, at *5 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017) (failure to explain RFC's derivation warranted remand when ALJ neither gave claimant "the benefit of the doubt" nor assessed an RFC more favorable than the remaining evidence would support).

Further, as the commissioner notes, while the plaintiff has complained generally about the insufficiency of the restrictions afforded by the RFC, he has failed to identify a specific physical limitation stemming from his medical impairment that the ALJ should have made a part of his RFC. *See* Opposition at 11. "Without more, this court can only conclude that any error in this regard by the administrative law judge was harmless." *Knudsen v. Colvin*, No. 2:14-cv-155-JHR, 2015 WL 1505689 at *5 (D. Me. Apr. 1, 2015).[3]

### C. Reliance on the Vocational Expert's Testimony at Step 5

During the hearing, the ALJ took testimony from vocational expert ("VE") Richard Hall, which she relied on at Step 5 to find the plaintiff capable of performing work existing in significant numbers in the national economy. *See* Record at 20-21.

VE Hall concluded that a person with an RFC corresponding to that found by the ALJ was capable of performing the representative occupations of mail sorter, order caller, and parts cleaner. *See id.* at 21-22. He testified that he relied on information from the Department of Labor's Bureau

---

[3] At oral argument, the plaintiff's counsel cited *Staples v. Colvin*, No. 2:15-cv-392-DBH, 2016 WL 4146083 (D. Me. Aug. 3, 2016) (rec. dec., *aff'd* Oct. 6, 2016), *Taylor v. Astrue*, 899 F. Supp.2d 383 (D. Mass. 2012), and *Crosby v. Heckler*, 638 F. Supp. 383 (D. Mass. 1985), for the proposition that the ALJ's failure to explain how she derived her physical RFC finding is reversible error. As counsel for the commissioner rejoined, the ALJ explained that she gave strong weight to the opinions of Drs. Trumbull and Weinberg, both of whom had the benefit of review of the treatment record, and to the Charkowick report. *See* Record at 19. To the extent that she deviated from those opinions by assessing a more plaintiff-friendly physical RFC, *Bowden* controls. *Staples*, *Taylor*, and *Crosby* are distinguishable in that, in those cases, the ALJ failed to explain his or her rationale for the adoption of an RFC that was not found to be more favorable to the plaintiff than the evidence otherwise supported. *See Staples*, 2016 WL 4146083, at *4-*5; *Taylor*, 899 F. Supp.2d at 89-90; *Crosby*, 638 F. Supp. at 385-86.

of Labor Statistics ("BLS") in providing numbers in which the cited jobs existed in the economy. *See id*. at 79-80. On cross-examination, he stated that the BLS does not report numbers for individual jobs but, rather, for "groups of jobs, which have commonalities." *Id*. at 80. Indeed, the plaintiff points out in his statement of errors that, according to the BLS website, the job grouping that contains the position of mail sorter is made up of 13 jobs, the grouping for order caller contains 71 jobs, and the grouping for parts cleaner contains 552 jobs. *See* Statement of Errors at 7. The plaintiff represents that each grouping contains jobs performed at a range of exertional and Specific Vocational Preparation ("SVP") levels. *See id*.

During cross-examination, the VE explained that the jobs are grouped by commonalities, but his responsibility was "to understand in court is to bring up [sic] what I believe is the fair number to represent a particular job, as far as availability." Record at 80.

The plaintiff notes that the VE did not state that his estimates of the available number of jobs were based on his professional experience. *See* Statement of Errors at 7. However, the VE did testify that he relied on his "professional association resource with more than 38 years of experience" as it pertained to the impact on the job base of a sit/stand limitation. Record at 76. During cross-examination, he also testified that he had 38 years of experience in the field. *See id*. at 82.

The plaintiff cites a series of cases from this district and other jurisdictions for the proposition that the VE's testimony as to jobs numbers was sufficiently flawed to warrant remand. *See* Statement of Errors at 8-9. In *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237 (D. Me. July 19, 2010) (*rec. dec., aff'd* Aug. 9, 2010), this court found that when a VE "essentially admitted" that he relied on "published raw numbers, which pertained . . . to *groups of jobs* of different skill and exertional levels that happened to contain the three specific jobs" at issue, his

11

testimony could not constitute substantial evidence that those jobs existed in significant numbers in the national economy. *Clark*, 2010 WL 2924237, at *3 (emphasis in original). On nearly indistinguishable facts, the court reached the same conclusion in *St. Pierre v. Astrue*, No. 1:10-cv-104-JAW, 2010 WL 5465635 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011).

By contrast, in *Decker v. Astrue*, Civil No. 09-641-P-S, 2010 WL 4412142 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010), this court deemed a VE's testimony "better supported" when the VE explained that his numbers for particular jobs were based on a percentage of the numbers for groupings of jobs and "on his 30 years of experience and market surveys[.]" Decker, 2010 WL 4412142, at *3.

The plaintiff argues that this case is more like *Clark* and *St. Pierre* than like *Decker*, in that the VE provided no testimony that he was relying on his experience and market surveys in addition to the BLS numbers. *See* Statement of Errors at 8-9. The plaintiff's contention that the VE did not testify to his experience and expertise, however, is inaccurate. Although the VE did not expressly state that he was basing his calculation of available jobs on his professional experience, he referenced that fact in other ways. He testified that he understood that his purpose in testifying was to "bring up what I believe is the fair number to represent a particular job, as far as availability." Record at 80. And he noted at other points, including when he was cross-examined about his basis for the numbers he had proffered, that he had 38 years of experience in the field. *See id*. at 76, 82.

Further, before the VE began to testify, the ALJ confirmed that his resume filed with the record was accurate. *See id*. at 72. The VE's "Resume of Experience and Background" reveals his lengthy career in the field and extensive list of credentials and training. *See id*. at 230-34. The ALJ also addressed this point directly in her decision, noting that the plaintiff's counsel had filed

a post-hearing brief arguing that the VE's numbers testimony was unreliable in part because he never testified that it was based on his professional experience. *See id*. at 21. The ALJ stated that she was "satisfied with [the VE's] qualifications as a certified rehabilitation counselor with more than 25 years' experience[,]" with "an established background of personal observations, studies, supervision and consultations with his peers." *Id*. at 21-22. Accordingly, she found that the VE "used established and reliable methods and data and formed opinions consistent with the methodology utilized by his contemporaries and other such professionals in relying upon sources, materials, and data that are not subject to further challenge until such time as either Congress or the Courts see fit to change them." *Id.* at 22 (citation omitted).

The VE's testimony about his years of experience and his role in providing an accurate estimate of the number of jobs available to an individual with the plaintiff's profile, as well as the ALJ's findings regarding his professional experience and methodology, align this case more closely with *Decker* than with *Clark* and *St. Pierre*. As in *Decker*, the VE indicated that his job numbers were not based solely on BLS data but also on his 38 years of experience, as the ALJ supportably concluded. That materially distinguishes this case from *Clark* and *St. Pierre*, in which the VE failed to explain whether or not his estimate of the number of jobs for specific positions selected from a larger job grouping was based on his experience in the field. *See Clark*, 2010 WL 2924237, at \*3; *St. Pierre*, 2010 WL 5465635, at \*2-\*3. Indeed, in both *Clark* and *St. Pierre*, the VE admitted that he had simply relied on raw job numbers for groups of jobs, not the individual jobs at issue. *See id*.[4]

---

[4] The plaintiff also cites *Wiley v. Colvin*, No. 13-2473, 2015 WL 9653048 (1st Cir. Feb. 11, 2015), in support of his bid for remand on this basis. *See* Statement of Errors at 9. In *Wiley*, the First Circuit noted that, while this court had cited *Clark* and *Decker* in rejecting the claimant's argument that the VE's testimony was too indefinite, the VEs in *Clark* and *Decker* appeared to have extracted job numbers out of the census-coded groupings for the particular jobs they identified, whereas the VE in *Wiley* testified that there was no way to do that. *See Wiley*, 2015 WL 9653048, at \*2. Yet, as the plaintiff acknowledges, *see* Statement of Errors at 9, because the First Circuit was remanding the case

13

The plaintiff finally contends that the commissioner failed to carry her Step 5 burden not only because the VE's job numbers were flawed but also because the ALJ relied on his answers to hypothetical questions that "omitted significant mental limitations[.]" Statement of Errors at 11. This argument hinges on the success of the plaintiff's RFC and job numbers arguments which, for the reasons discussed above, I have determined are without merit.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of June, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

for further proceedings related to the commissioner's Step 5 burden, it took no position on whether those numbers could satisfy that burden, *see Wiley*, 2015 WL 9653048, at *2.